UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DIALYSIS CLINIC, INC.,

        Plaintiff,

- against -

EMPIRE HEALTHCHOICE ASSURANCE,
INC. d/b/a EMPIRE BLUECROSS BLUESHIELD,
EMPIRE HEALTHCHOICE HMO, INC.,
and STATEN ISLAND UNIVERSITY HOSPITAL,

        Defendants.

**COMPLAINT**
Civil Case No.: 1:18-CV-0312 (TJM/DJS)

**JURY TRIAL DEMANDED**

The plaintiff, Dialysis Clinic, Inc., by and through its attorneys, Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C., complaining of the defendants, alleges as follows:

### INTRODUCTION

1. Plaintiff herein has suffered significant monetary damages as a result of the negligent, improper and deceptive actions of the defendants. The plaintiff is seeking to be made whole, and to prevent defendants from committing further abuses of reasonable and acceptable business practices in the healthcare insurance industry in the State of New York.

2. Plaintiff, Dialysis Clinic, Inc. (hereinafter "DCI"), provides a self-funded health insurance plan to its employees (hereinafter "Insurance Plan"). Defendants, Empire Healthchoice Assurance, Inc. d/b/a Empire BlueCross BlueShield and Empire Healthchoice HMO, Inc. (hereinafter "Empire defendants"), are part of the Blue Cross Blue Shield network and are responsible for administering the plaintiff's Insurance Plan in New York State.

3. As part of administering the plaintiff's Insurance Plan in New York, the Empire defendants entered into a contract with defendant, Staten Island University Hospital (hereinafter "SIUH"), pursuant to which SIUH became a participating provider for access by plaintiff's employees under the Insurance Plan.

4. This contract, which was not negotiated or approved by DCI, enabled SIUH to be paid hundreds of thousands of dollars for services it did not provide, and for DCI to be stuck with the bill.

5. This negotiated windfall for SIUH is unjust, inconsistent with reasonable and acceptable business practices in the healthcare industry in New York, and must be corrected.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(c)(2).

## PARTIES

8. DCI is a foreign not-for-profit corporation organized and existing under the laws of the State of Tennessee, and duly authorized to do business in the State of New York.

9. The Empire defendants are for-profit insurance corporations organized under the New York Insurance Law and duly authorized to do business in New York.

10. SIUH is a domestic not-for-profit corporation organized and existing under the laws of the State of New York.

## FACTS

11. DCI provides care and rehabilitation services in New York State and nationwide for patients with end-stage renal disease.

12. Certain employees of DCI, including employees located in New York, are eligible for health insurance under a group insurance plan provided by DCI (the "Insurance Plan").

13. The Insurance Plan is self-funded by DCI.

14. Pursuant to an Administrative Services Agreement (hereinafter "TPA Agreement"), BlueCross BlueShield of Tennessee, Inc. (hereinafter "BCBS of Tennessee") is the third-party administrator of the Insurance Plan.

15. BCBS of Tennessee handles claims by Insurance Plan members in the State of Tennessee (hereinafter "designated service area").

16. BCBS of Tennessee is part of a network of BlueCross BlueShield entities throughout the country that are affiliated with one another through mutual licensing agreements, which BlueCross BlueShield calls "Inter-Plan Programs."

17. When Insurance Plan members access healthcare services outside of the designated service area, claims for those services are handled by the BlueCross BlueShield "licensee" in that state.

18. Pursuant to the TPA Agreement, the BlueCross BlueShield licensees are responsible for contracting with participating healthcare providers outside of the designated service area and handling substantially all interactions with those providers.

19. At all relevant times, the Empire defendants were members of the BlueCross BlueShield network and were licensees of BCBS of Tennessee for the purpose of administering DCI's Insurance Plan in New York.

20. At all relevant times, an employee of DCI who will be referred to herein as "A"[1] was a resident of Staten Island, New York and was being provided health insurance under the Insurance Plan.

21. In or around June 2015, "A" was admitted to and received medical services at SIUH.

22. SIUH was a participating healthcare provider under the Insurance Plan pursuant to a contractual agreement between SIUH and the Empire defendants.

23. The medical services "A" received at SIUH included Extra Corporeal Membrane Oxygenation ("hereinafter referred to "ECMO").

24. ECMO is a treatment that provides blood oxygenation to patients with significant heart and/or lung failure.

25. ECMO treatment is a "last resort" medical treatment for patients suffering from severe heart or lung failure.

26. Adult patients receiving ECMO treatment often do not survive for more than thirty (30) days after the commencement of ECMO treatment.

27. In this case, "A" passed away after less than 48 hours of ECMO treatment.

---

[1] The identity of "A" is being withheld because the facts of this case involve "A"'s medical treatment. "A"'s identity will be revealed to the parties after execution of a confidentiality agreement.

28. SIUH billed $52,858.96 for inpatient services relative to its June 2015 treatment of "A".

29. However, pursuant to a previously negotiated price for ECMO treatment between SIUH and the Empire defendants, SIUH increased the invoiced amount by $642,128.91, to a total of $694,987.87.

30. The previously negotiated price was based on forty-six (46) days of ECMO treatment even though, in this case, "A" passed away after only two days of treatment.

31. This rate increase bore no relationship to the treatment provided to "A", nor is it consistent with the stated adjustment from 2 to 46 days.

32. DCI was precluded from objecting to, escrowing or otherwise avoiding payment of this sum by virtue of the wrongful conduct of the defendants, who instituted this rate increase without consideration or concern for DCI's interests.

33. The defendants' negotiated price for ECMO treatment was unmoored from reality, facts, treatment, and exposed DCI to liability it did not negotiate or accept.

34. The Empire defendants authorized payment of the $694,987.87 invoice in full to its co-defendant, SIUH.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Fiduciary Duty Against Empire Defendants)

35. Pursuant to the TPA Agreement and the Empire defendants' Licensing Agreement with BCBS of Tennessee, the Empire defendants had a duty to act for the benefit of DCI upon matters relating to the negotiation of contracts with SIUH and other participating healthcare providers in New York State.

36. Pursuant to the TPA Agreement and the Empire defendants' Licensing Agreement with BCBS of Tennessee, the Empire defendants had a duty to act for the benefit of DCI upon matters relating to the processing, handling and payment of claims under the Insurance Plan for services rendered by SIUH and other participating healthcare providers in New York State.

37. The Empire defendants failed to exercise reasonable business judgment in agreeing to and/or authorizing payment of a negotiated price for ECMO treatment which contemplates that the patient will undergo the treatment for forty-six (46) days.

38. The Empire defendants failed to act for the benefit of DCI in agreeing to and/or authorizing payment of a negotiated price for ECMO treatment which contemplates that the patient will undergo the treatment for forty-six (46) days.

39. The Empire defendants agreed to and authorized payment of this exorbitant amount despite the undeniable fact that "A" received ECMO treatment for only two days.

40. The Empire defendants agreed to and authorized payment of this exorbitant amount without any care or consideration for the interests of DCI.

41. In doing so, the Empire defendants breached their fiduciary duty to DCI.

42. As a direct result, DCI has been damaged.

### AS AND FOR A SECOND CAUSE OF ACTION
(Negligence Against the Empire Defendants)

43. Pursuant to the TPA Agreement and the Empire defendants' Licensing Agreement with BCBS of Tennessee, the Empire defendants owed a duty of care to DCI relating to their negotiation of contracts with healthcare providers in New York State.

44. The Empire defendants had a duty to negotiate prices and authorize payment for services in a prudent manner and not based on irrational assumptions and sweetheart deals with healthcare providers.

45. Pursuant to the TPA Agreement and the Empire defendants' Licensing Agreement with BCBS, the Empire defendants owed a duty of care to DCI relating to the processing, handling and payment of claims under the Insurance Plan for services rendered by participating healthcare providers in New York State.

46. The Empire defendants failed to exercise reasonable business judgment and/or otherwise act reasonably in agreeing to and/or authorizing payment of a negotiated price for ECMO treatment which contemplates that the patient will undergo the treatment for forty-six (46) days.

47. As a direct result, DCI has been damaged.

48. The damage to DCI was a foreseeable and proximate result of the Empire defendants negligent conduct.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Unjust Enrichment Against SIUH)

49. The value of the services actually provided and billed to "A" by SIUH was $52,858.96, or less.

50. However, SIUH was paid $694,987.97 for forty-six (46) days of ECMO treatment, when in fact "A" only received ECMO treatment for two days prior to his death.

51. This overpayment unjustly enriched SIUH, at the expense of DCI, as the provider of the self-funded Insurance Plan.

52. It is against equity and good conscience to permit SIUH to retain the monies it received in excess of the fair market value of the services, equipment and labor provided, especially when DCI was given no say in the negotiation of the price nor authorization of payment for the ECMO treatment.

53. As a result of SIUH being unjustly enriched, DCI has been damaged.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Violation of NY General Business Law § 349)

54. The defendants knew or should have known that a negotiated price which contemplates ECMO treatment for forty-six (46) days is misleading and unjust, in light of the fact that "A" received two days of treatment, and patients receiving ECMO treatment often do not survive beyond thirty (30) days after treatment commences.

55. The defendants knew or should have known that their negotiated price for ECMO treatment was likely to result in a windfall for SIUH, at the expense of the patient, the patient's employer and/or other third parties.

56. Defendants knew that a negotiated price for a set number of days of ECMO treatment would result in substantial financial harm to entities such as DCI that were responsible for payment of employee medical expenses.

57. Defendants knew that by negotiating prices without involvement or consideration of the parties responsible for payment, they would do substantial harm to each such party responsible for payment whenever the services provided fell short of the negotiated price based upon 46 days of service.

58. Upon information and belief, the defendants have a pattern and practice of negotiating a misleading and unjust price for ECMO treatment, to the detriment of their patients, customers and the public at large.

59. As a result of defendants' deceptive and misleading actions, defendants have violated New York's General Business Law § 349, and DCI has been damaged.

60. As further evidence of the defendants' bad faith, they have refused to provide DCI with a copy of the agreement between the Empire defendants and SIUH and agreements between the Empire defendants and BCBS of Tennessee, the contents of which may give rise to additional state and federal claims.

**WHEREFORE**, plaintiff, Dialysis Clinic, Inc., requests judgment against the defendants in an amount to be determined by the Court.

Dated: March 12, 2018

CARTER, CONBOY, CASE, BLACKMORE, MALONEY & LAIRD, P.C.

BY: _____
MICHAEL J. MURPHY
Bar Roll No. 102244

BY: _____
JONATHAN E. HANSEN
Bar Roll No. 514951
Attorneys for Plaintiff
Office & P.O. Address
20 Corporate Woods Boulevard
Albany, NY 12211